**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER JAMESON,

    Defendant - Appellant.

No. 05-4260

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:04-CR-693-TS)**

---

Trina A. Higgins, Assistant United States Attorney (and Brett L. Tolman, United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

Kent R. Hart (and Steven B. Killpack, Federal Defender, Utah Federal Public Defender's Office, on the brief), Salt Lake City, Utah, for Defendant - Appellant.

---

Before **KELLY**, **ALARCÓN,**[*] and **HENRY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Defendant-Appellant Christopher Jameson appeals from his conviction, after a jury trial, for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was sentenced to forty-one months of imprisonment followed by thirty-six months of supervised release. On appeal, Mr. Jameson challenges the sufficiency of the evidence linking him to the firearm, the adequacy of a jury instruction concerning constructive possession, and the denial of his motion for mistrial based on the introduction of certain statements linking him to a bayonet. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

In the early morning hours of August 27, 2004, Sergeant Vaughn Allen of the Salt Lake County Sheriff's Department was on patrol in Salt Lake County, Utah. He observed a maroon colored Dodge Stratus pull out of an apartment complex and turn eastbound onto a main thoroughfare. The officer noticed that the car's taillights were not working, and he initiated a traffic stop. The car pulled into a gas station and stopped in a well-lit area.

When the officer turned his spotlight onto the car, he saw that there were four occupants. He observed a male occupant in the front passenger seat lean forward and appear to rummage through the glove compartment. He also observed a male occupant in the rear passenger-side seat drop his shoulder and lean forward, as if he were retrieving or concealing something on the floor. The

officer later determined that the man in the front passenger seat was Terry Paswaters and that the man in the rear passenger-side seat was Mr. Jameson. Mr. Jameson's brother, Cody Jameson, occupied the rear driver's-side seat while Sarah Maciano, the owner of the car, was the driver.

Sergeant Allen approached the vehicle from the driver's side and pointed his flashlight into the car to look for weapons in plain view. He noticed food and other debris on the floor. Because of Mr. Paswaters' movement toward the glove box and Mr. Jameson's movement toward the floor, the officer testified that he was concerned about the occupants hiding drugs or drug paraphernalia, and also about the possibility (attendant to every stop) that the occupants might be armed. III R. at 17-18. But, despite shining his flashlight into the car to look for such items, he initially saw none. Id. at 22.

Sergeant Allen then asked Ms. Maciano for her driver's license, registration, and insurance card. She responded that her license was suspended. Sergeant Allen then removed Ms. Maciano from the car and issued her a citation. During this time, the other occupants remained in the car. Deputy Bryan Marshall soon arrived to assist with the traffic stop. Because Ms. Maciano did not have a valid driver's license, the officers planned to impound the car unless one of the other occupants could legally drive. Upon inquiry, however, the officers learned that none of the other occupants were licensed to drive.

Deputy Marshall then questioned each of the occupants to determine their

3

identities. He first questioned Mr. Paswaters and Cody Jameson. After conveying the names of both men to dispatch, Deputy Marshall learned that each had outstanding warrants for his arrest. Accordingly, Deputy Marshall placed both Mr. Paswaters and Cody Jameson under arrest.

Deputy Marshall then questioned Mr. Jameson, who indicated that his name was "Adam Gibbons," and provided a birth date. When Deputy Marshall tried to verify this information with dispatch, he learned that the physical description of "Adam Gibbons" was inconsistent with Mr. Jameson's physical appearance. Mr. Jameson then indicated that his real name was "Christopher Gibbons," but, again, the physical description for "Christopher Gibbons" was inconsistent with Mr. Jameson's physical appearance. Deputy Marshall then placed Mr. Jameson under arrest.

Sergeant Allen then conducted a search of the car to inventory its contents. During the search, he discovered a World War II-era bayonet sitting on the back seat. As he reached for the bayonet, he noticed a small, unloaded .22 caliber pistol and a key chain on the floor in front of where Mr. Jameson had been sitting. Sergeant Allen testified that the pistol lay exactly where Mr. Jameson's feet would have been before he exited the car. A subsequent examination of the pistol failed to recover any fingerprints, nor were investigators able to determine who owned or used the pistol.

Prior to trial, the government served notice of its intent to introduce Fed. R.

4

Evid. 404(b) evidence implicating Mr. Jameson in a car theft that occurred on the evening prior to his arrest. The government alleged that the key chain found next to the pistol belonged to a car that Mr. Jameson had stolen. The government also alleged that the bayonet belonged to the owner of the stolen car and that a backpack, also found in the back of the Dodge Stratus, contained an owner's manual from the stolen car. Mr. Jameson filed a motion in limine seeking to exclude the government's Fed. R. Evid. 404(b) evidence of the car theft. The district court ruled the evidence was inadmissible based on its slight probative value and strong danger of unfair prejudice.

At trial, Sergeant Allen testified to the pertinent facts. When asked on cross-examination how he found the gun, Sergeant Allen responded that he saw the gun as he reached inside the car to retrieve the bayonet. Defense counsel did not object to this testimony. Later in the trial, when Deputy Marshall was asked on cross-examination who removed Mr. Jameson from the car, he responded that Sergeant Allen had, and that after he removed Mr. Jameson, he determined he was "sitting on a bayonet." IV R. Doc. at 71. Defense counsel objected and requested that Deputy Marshall's testimony be stricken. The district court sustained the objection.

Defense counsel next requested a mistrial based on both Sergeant Allen and Deputy Marshall's references to the bayonet. The district court responded that it never understood the motion in limine as addressing evidence concerning the

5

mere existence of the stolen items in the Dodge Stratus, but rather only evidence tying Mr. Jameson to the car theft. Furthermore, the district court held that defense counsel had invited the references to the bayonet and that, regardless, the references were inconsequential.

At the jury instruction conference, the government urged an instruction on constructive possession in joint occupancy cases that equated constructive possession with knowledge and access to the firearm. Defense counsel objected, and sought language from a proposed pattern instruction defining actual and constructive possession. The district court ultimately adopted the government's proposed instruction. The instruction provided in pertinent part:

> The law recognizes two types of possession: actual possession and constructive possession. A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it.
>
> A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion and control over an object, either directly or through another person or persons, is then in constructive possession of it.
>
> More than one person can be in possession of an object if each knows of its presence and has the power and intention to control it.
>
> A defendant has joint possession of an object when two or more persons share actual or constructive possession of it. However, merely being present with others who have possession of the object does not constitute possession.
>
> Where a defendant jointly occupies the place where the object is found (such as a room or a car) constructive possession may be shown by direct evidence or by circumstantial evidence, which

6

> establishes beyond a reasonable doubt that the defendant had knowledge that the firearm was contained in the place and the defendant had the ability to access the firearm.

I R. Doc. 55 at 23 (Instruction 19).

## Discussion

I.    Sufficiency of the Evidence

Sufficiency of the evidence to support a jury's verdict is a legal issue that we review de novo. United States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001). We ask "whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999). Nevertheless, we will not "uphold a conviction obtained by piling inference upon inference." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999). Instead, there must be some substantial evidence supporting a conviction that does more than raise a mere suspicion of guilt. Id.

To establish a violation of 18 U.S.C. § 922(g)(1), the government had to prove: (1) that Mr. Jameson had previously been convicted of a felony, (2) that he thereafter knowingly possessed a firearm, and (3) that such possession was in or affected interstate commerce. United States v. Michel, 446 F.3d 1122, 1128 (10th Cir. 2006). On appeal, Mr. Jameson challenges only the sufficiency of the

7

evidence with respect to his knowing possession.

As we have repeatedly held, possession can be actual or constructive. Id. Actual possession exists when a person has direct physical control over a firearm at a given time. See United States v. Munoz, 150 F.3d 401, 416 (5th Cir. 1998); see also United States v. Bowen, 437 F.3d 1009, 1017 (10th Cir. 2006). Constructive possession exists when a person "knowingly holds the power and ability to exercise dominion and control over [a firearm]." United States v. Lopez, 372 F.3d 1207, 1211 (10th Cir. 2004). When a defendant has exclusive possession of the premises on which a firearm is found, knowledge, dominion, and control can be properly inferred because of the exclusive possession alone. United States v. Avery, 295 F.3d 1158, 1177 (10th Cir. 2002). However, when "two or more people occupy a given space . . . the government is required to meet a higher burden in proving constructive possession." Michel, 446 F.3d at 1128. In other words, in joint occupancy cases, knowledge, dominion, and control may not be inferred simply by the defendant's proximity to a firearm. Instead, the government must "present evidence to show some connection or nexus between the defendant and the firearm." Id.

To be clear, when the government seeks to convict a defendant under § 922(g)(1), and the firearm was found in an area occupied by two or more persons, it must prove either (1) actual possession, or (2) constructive possession by way of demonstrating a nexus between the defendant and the firearm. Of

8

course, what constitutes a sufficient nexus is the next issue. In this regard, our precedent is, admittedly, cryptic.

We have held that "knowledge and access are required to prove that [a] defendant knowingly held the power to exercise dominion and control over [a] firearm." United States v. Colonna, 360 F.3d 1169, 1179 (10th Cir. 2004). Stated another way, "where the defendant in a joint occupancy situation has knowledge of and access to the weapons, there is a sufficient nexus to infer dominion and control." Id. Thus, if there is sufficient evidence to infer that a defendant had knowledge of and access to a firearm, there is also sufficient evidence to infer that he had dominion and control over the firearm, and, consequently, that he constructively possessed the firearm. Proximity alone, however, is insufficient to establish knowledge and access to (and dominion and control over) a firearm in a joint occupancy case. See United States v. Hishaw, 235 F.3d 565, 572 (10th Cir. 2000) (citing United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996)). But when combined with other evidence in the case linking the defendant to the firearm, proximity is material and probative evidence that may be considered in deciding whether a defendant had knowledge of and access to (and dominion and control over) the contraband. See United States v. Ortiz-Ortiz, 57 F.3d 892, 895 (10th Cir. 1995); United States v. Espinosa, 771 F.2d 1382, 1397 (10th Cir. 1985).

Thus, the rule is as follows: (1) proximity alone may not establish

9

knowledge and access in a joint occupancy case, (2) neither may proximity alone support a finding of dominion and control in a joint occupancy case, (3) evidence of knowledge and access gives rise to a permissive inference of dominion and control, (4) evidence of knowledge and access may be proved by direct evidence, or inferred from circumstantial evidence, so long as the circumstantial evidence includes something other than mere proximity, (5) proximity may be considered with other evidence in the case to support an inference of knowledge and access, and dominion and control over the firearm. This is the practical effect of our requirement that there be a "nexus" between a defendant and a firearm in a constructive possession, joint-occupancy case.

In this case, the government could have proven the "knowingly possessed" element of § 922(g)(1) in one of two ways. First, it could have shown that Mr. Jameson actually possessed the pistol–that he had direct, physical control over it. Alternatively, it could have shown constructive possession–that he had knowledge of and access to, and thus dominion and control over, the pistol, so long as the constructive possession was supported by more than Mr. Jameson's mere proximity to the pistol. Upon review of the evidence, we conclude that there was sufficient evidence for a reasonable jury to find either actual or constructive possession.

Sergeant Allen testified that, as he approached the car, he saw Mr. Jameson lean forward, as though he "was trying to retrieve something from or conceal

10

something underneath the seat in front of him." III. R. at 17. Sergeant Allen also testified that he didn't see the pistol initially because it was underneath Mr. Jameson's foot. Id. at 43. Sergeant Allen eventually found the pistol in the exact spot where Mr. Jameson's foot had been. Id. at 43-44. He testified that it was obvious where the pistol was located and that, after Mr. Jameson left the vehicle, the pistol was not concealed by anything. Id. at 23. Although Mr. Jameson argues that the car was not well lit when Sergeant Allen inspected it, and that the floor was cluttered with garbage such that the pistol was not clearly visible, Sergeant Allen was adamant in his testimony. We may not upset the jury's credibility determination on appeal. See United States v. Silvers, 84 F.3d 1317, 1328 (10th Cir. 1996).

From this evidence, a reasonable juror could infer that Mr. Jameson had actual physical control of the pistol when the car was pulled over and that he was trying to hide it underneath the seat or under his foot as Sergeant Allen approached. Similarly, a reasonable juror could easily have inferred that Mr. Jameson had knowledge of and access to the pistol and consequently, dominion and control, satisfying all the elements of constructive possession. This is not a case, as Mr. Jameson suggests, where "the Government only showed that [he] was present inside a car with three others where a gun was found." Aplt. Br. at 17-18. Instead, this is a case where Mr. Jameson's proximity to the pistol was coupled with Mr. Jameson's furtive movements, see Bowen, 437 F.3d at 1014-16, his

11

inferred physical contact with the pistol (his foot was on top of it), and the pistol's being in plain view and easily retrievable to a passenger in Mr. Jameson's seat, see United States v. Gorman, 312 F.3d 1159, 1164 (10th Cir. 2002). Sergeant Allen's testimony that the parking lot was clearly lit adds credibility to his other testimony and thus strengthens the inferences a reasonable juror could draw from it. These facts allow for a reasonable inference of actual possession or constructive possession, and they certainly demonstrate a nexus between Mr. Jameson and the pistol. Accordingly, there was sufficient evidence to show that Mr. Jameson knowingly possessed the pistol.

II.     The Jury Instruction Regarding Constructive Possession

Mr. Jameson argues that the district court "erred when [it] refused to instruct the jury that[,] in joint possession cases[,] some nexus or connection must link [] Mr. Jameson to the gun to convict him." Aplt. Br. at 22. It goes without saying that district courts have a duty to instruct the jury correctly on the law. United States v. Scarborough, 128 F.3d 1373, 1377 (10th Cir. 1997). We review a district court's denial of an objection to jury instructions de novo. United States v. Lawrence, 405 F.3d 888, 896-97 (10th Cir. 2005). In conducting our review, we consider the jury instructions as a whole "to determine whether the jury may have been misled, upholding the judgment in [the] absence of substantial doubt that the jury was fairly guided." United States v. Magleby, 241 F.3d 1306, 1309-10 (10th Cir. 2001).

12

Mr. Jameson complains that the district court did not offer an explicit instruction on the nexus requirement. He argues that, based on the instruction given, the jury might have impermissibly used Mr. Jameson's proximity to the pistol, and nothing more, to establish knowledge and access.

Initially, we note that the instruction given in this case differs on this point from the instruction on constructive possession requested by Mr. Jameson, which states in pertinent part:

> In the situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection between the particular defendant and the object.

I R. Doc. 41 at 2 (Instruction 1); see also Tenth Circuit Criminal Pattern Instruction 1.31.

On this point, the instruction offered by Mr. Jameson was preferable to that used by the district court because it expressly stated that mere control over the area near the firearm (in other words, proximity) is insufficient, by itself, to establish constructive possession.[1] The instruction used by the district court

_____

[1] We do not mean to suggest that the pattern instruction offered by Mr. Jameson will be preferable or appropriate in every conceivable case. Nor should courts necessarily craft an instruction relying on language taken from appellate cases. Instead, the particular form of words required for any particular instruction in any particular case may vary depending on the particular facts, but, in every

(continued...)

13

invites the argument that proximity might be used as the only circumstantial evidence proving knowledge and access. An instruction on constructive possession should eliminate that possibility by instructing on the nexus requirement.

Nevertheless, the instruction given by the district court stated: "However, merely being present with others who have possession of the object does not constitute possession." I R. Doc. 55 at 23 (Instruction 19). It further stated: "In addition, momentary or transitory control of an object, without criminal intent, is not possession. You should not find that the defendant possessed the object if he possessed it only momentarily, and either did not know that he possessed it or lacked criminal intent to possess it."[2] Id. at 23-24. These additional statements adequately informed the jury that mere proximity is not sufficient to establish constructive possession.

Moreover, in United States v. Ledford, 443 F.3d 702 (10th Cir. 2005), we approved the use of a very similar instruction to that used by the district court in this case. In Ledford, the district court instructed the jury: "To prove constructive

_____

[1](...continued)
case, the instruction as a whole must convey the correct statement of the applicable law. See Webb v. ABF Freight Sys., Inc., 155 F.3d 1230, 1248 (10th Cir. 1998).

[2] As stated in Colonna, 360 F.3d at 1179, intent to possess is not required by § 922(g). "It is not necessary to show that the defendant intended to exercise that dominion or control . . . ." Id.

14

possession the government must prove that the defendant had knowledge of and access to the firearm." Id. at 714. We held that a specific nexus instruction was unnecessary where the evidence clearly showed that the defendant had knowledge of and access to a firearm. Id. at 717. We cautioned, however, that there could be a future case where "the specific facts require a harder look at the nexus requirement." Id.

This is not that case. Here, a significant quantum of evidence, aside from his presence in the vehicle and proximity to the pistol, showed that Mr. Jameson had actual and/or constructive possession. That evidence includes his furtive movements, the inference that his foot was in physical contact with the pistol (covering it up), and the fact that the pistol was in plain view and easily accessible to him. Based on our conclusion in Ledford, the district court's additional instructions indicating that proximity is not sufficient to infer constructive possession, and the significant evidence of actual and constructive possession aside from proximity, we conclude that the jury instruction on constructive possession was adequate.

III.   The Motion for a Mistrial

Mr. Jameson argues that the testimony concerning the existence of the bayonet was so damaging that it required the district court to grant a mistrial. We review a district court's decision not to grant a mistrial for abuse of discretion. United States v. Kravchuk, 335 F.3d 1147, 1154 (10th Cir. 2003). We also

15

review a district court's decision to admit evidence for abuse of discretion. United States v. DeLuna, 10 F.3d 1529, 1531 (10th Cir. 1993).

Mr. Jameson devotes a significant portion of his brief to arguing that the statements concerning the bayonet were not relevant (Fed. R. Evid. 401), unduly prejudicial (Fed. R. Evid. 403), and inadmissible as evidence of prior bad acts (Fed. R. Evid. 404(b)). By making these arguments, Mr. Jameson essentially asks us to conduct two inquiries: (1) whether the district court abused its discretion by admitting the statements, and (2) whether the statements should have resulted in a mistrial. However, defense counsel failed to offer a contemporaneous objection to Sergeant Allen's statement, and Mr. Jameson does not argue plain error on appeal, so we need not review the district court's decision to admit that statement. Similarly, the district court sustained defense counsel's objection to Deputy Marshall's statement and ordered the statement stricken from the record. So we are only left with determining whether the two statements satisfy the substantive standard for a mistrial, and we need not engage in an analysis of whether the statements were inadmissible under the Federal Rules of Evidence.

To establish his entitlement to a mistrial, Mr. Jameson must show that the two statements concerning the bayonet impaired his fundamental right to a fair and impartial trial. United States v. Caballero, 277 F.3d 1235, 1242 (10th Cir. 2002). Mr. Jameson's chief argument in this respect is that the references to the bayonet impugned his character. He argues the statements "prejudiced the jury

16

into believing that [he] had a propensity to possess weapons or to commit violence." Aplt. Br. at 42. In support of his argument, Mr. Jameson cites a case from the D.C. Circuit in which the court held that admitting testimony of the presence of a knife in a felon in possession case was in error under Fed. R. Evid. 404(b). See United States v. King, 254 F.3d 1098, 1100 (D.C. Cir. 2001).[3] Again, however, we are not concerned with the district court's decision to admit the statements under the rules of evidence. We are only concerned with the statements' effect on Mr. Jameson's right to a fair trial.

Mr. Jameson also argues that the statements may have misled the jury such that it "may have been confused about whether Mr. Jameson should be convicted for possessing the bayonet." Aplt. Br. at 42. We struggle to see how the jury could have drawn such an inference based on the two momentary and passing references to a bayonet, especially when the prosecutor failed to otherwise mention the bayonet in her opening or closing argument. The fact that the references to the bayonet were in passing, and merely reflected on its presence in the back seat of the car, demonstrate that the statements did not in any way implicate Mr. Jameson in the earlier car theft, or any other crime for that matter. Furthermore, the references to the bayonet were simply part of Sergeant Allen and

---

[3] Mr. Jameson fails to mention that the court in King refused to reverse the defendant's conviction because it determined that admitting the statements regarding the knife was harmless error. Id. at 1101.

17

Deputy Marshall's narrative of how they discovered the pistol. It is also noteworthy that the statements were prompted by defense counsel's own questions on cross-examination, not by the prosecutor's questions on direct examination.

We find useful the analysis in United States v. Short, 947 F.2d 1445 (10th Cir. 1991). In that case, the prosecutor wrongly elicited testimony about the defendant's prior convictions. Id. at 1453. We found the error did not substantially influence the outcome of the trial because: (1) there was only one brief reference to the conviction in the entire trial, (2) the government did not put the statement to other use, (3) defense counsel did not request a limiting instruction, and (4) there was ample evidence to convict the defendant notwithstanding the improper testimony. Id. at 1455. While defense counsel in this case did request a mistrial after Deputy Marshall's statement, and thus sought to remedy the supposed damage done to Mr. Jameson's case, the other facts we considered dispositive in Short are present here. There were only two brief, passing references to the bayonet. The prosecutor did not otherwise comment on the bayonet (indeed the bayonet was only mentioned while defense counsel was conducting cross-examination). And, finally, as already discussed, there was sufficient evidence to find that Mr. Jameson actually or constructively possessed the pistol, and that he was guilty of being a felon in possession, regardless of the statements concerning the bayonet. Consequently, we conclude that the two

statements did not substantially affect Mr. Jameson's right to a fair trial and that a mistrial was not warranted.

AFFIRMED.