FILED
United States Court of Appeals
Tenth Circuit

December 16, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MALCOLM T. BEDFORD,

Defendant - Appellant.

No. 07-3353
(D. Ct. No. 6:07-CR-10094-MLB-1)
(D. Kan.)

---

ORDER AND JUDGMENT[*]

---

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

---

Following a three-day trial, a jury convicted Malcolm Bedford of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Mr. Bedford argues that the evidence was not sufficient for a reasonable jury to find him guilty. We hold that the evidence presented at trial was sufficient to convict Mr. Bedford. Taking jurisdiction under 28 U.S.C. § 1291, we therefore AFFIRM his conviction.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Early on the morning of October 29, 2006, a crowd gathered outside the American Legion Club in Wichita, Kansas. Police officers who were members of Wichita's Special Community Action Team also were on site because the club had been the location of several prior disturbances. Officer Christian Cory, who was less than fifty feet from the club on its east side, saw a black male raise a gun into the air and fire it. Though he could not see the man's entire body, Officer Cory testified that the shooter was wearing a white T-shirt and a black baseball cap that had yellow stripes coming down from the top. After the gunshot, many people in the crowd started running. The man who fired the gun disappeared into the crowd, and Officer Cory was unable to locate him. He radioed what he had seen to other officers.

Officer Travis Easter was on the west side of the club outside the gates to the parking lot when he heard the gunshot. He then saw approximately thirty to forty people run out of one of the gates. One man in particular caught Officer Easter's attention because he was slouched over with his hands shoved inside his T-shirt, as if he was hiding something under his clothes. Officer Easter testified that he shined his flashlight on the man, who then looked in the officer's direction and a moment later started running away. Officer Easter said he got a good look at the man's face before the man ran away.

Concerned that the man had a gun, Officer Easter chased the suspect.

When Officer Easter was about twenty feet away from him, the suspect ran around an automobile that was parked in a driveway. Officer Easter saw the man crouch down near the right-front tire. The suspect made a motion with his arm, and Officer Easter believed the suspect had hidden something. The suspect then continued running away, and Officer Easter radioed for help while he approached the car. He found a loaded nine-millimeter handgun on the tire.

Officer Easter resumed chasing the suspect. At trial, Officer Easter testified that he saw the suspect running away from him toward the south, and then saw him turn east onto a side street. As Officer Easter rounded the corner, he saw that other officers had already stopped the suspect. Officer Easter yelled to the other officers that they had "the guy," and the officers placed the suspect into custody. Officer Cory, who had heard the radio call for assistance, also had arrived by this point.

Officer Easter testified that the person who was taken into custody—Mr. Bedford—was the same person he had seen coming out of the gate, and the same person he had seen squatting by the side of a car during the ensuing chase. After Mr. Bedford was taken into custody, Officer Easter noticed a black baseball cap on the ground near Mr. Bedford. That hat was a black Los Angeles Dodgers cap with yellow stripes. Officer Cory identified the hat in court as the same hat he had seen on the man who fired the gun in the parking lot. Officer Cory also testified that he saw Mr. Bedford wearing the hat when he was arrested.

After Mr. Bedford had been taken into custody, Officer Cory returned to the parking lot to search for evidence. He found a shell casing. At trial, a firearm tool mark examiner testified that the shell casing matched the gun that Officer Easter had found on the tire during the chase.

The defense called three witnesses during the trial. One testified that Mr. Bedford was not the man who shot the gun into the air. Another witness testified that Mr. Bedford was grabbing the wrist of the man who had the gun. The third witness testified that she saw Mr. Bedford on the ground, being kicked by approximately twenty people. She said she went inside and then heard gunshots.

On appeal, Mr. Bedford argues there was insufficient evidence to convict him. In particular, he notes Officer Easter's testimony that he did not see blood on the shirt of the man he was chasing. A photograph of Mr. Bedford, taken after he was in custody, shows a significant amount of blood on his shirt in the right shoulder area. Mr. Bedford also argues that the police did not find any matching fingerprints on the gun. In addition, he argues that the situation was extremely chaotic, with dozens of people—most of them African-American—running in various directions. Because Officer Easter twice lost sight of the man he was chasing, Mr. Bedford argues that it was not reasonable for the jury to find that Mr. Bedford was the man who had possessed the gun.

## II. DISCUSSION

We review whether the government presented sufficient evidence to uphold a conviction de novo. *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007). "We will not uphold a conviction obtained by piling inference upon inference," and the conviction must be supported by substantial evidence that "does more than raise a mere suspicion of guilt." *United States v. Jameson*, 478 F.3d 1204, 1208 (10th Cir. 2007) (quotations omitted).

Still, a defendant must overcome a difficult burden when challenging the sufficiency of the evidence. We consider all evidence "in the light most favorable to the government." *Sells*, 477 F.3d at 1235. In applying this standard, "[w]e will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury." *Id.* We also will not assess the credibility of witnesses. *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008). We will overturn the conviction "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quotations omitted).

To sustain a conviction under 18 U.S.C. § 922(g)(1), the prosecution must prove that "1) the defendant was convicted of a felony; 2) the defendant thereafter knowingly possessed a firearm; and 3) the possession was in or affecting interstate commerce." *United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996). The parties stipulated to the first and third elements of the alleged crime. In order to reverse Mr. Bedford's conviction, therefore, we must conclude that no rational

trier of fact would find that Mr. Bedford knowingly possessed a firearm.

The government can establish this element by proving either actual or constructive possession. *Jameson*, 478 F.3d at 1209. The government in this case alleges actual possession, which "exists when a person has direct physical control over a firearm at a given time." *Id.*

Even when the government claims actual possession, it is not necessary for a witness to have seen the gun in the defendant's possession.[1] For instance, in *Jameson* we held the evidence was sufficient for a jury to find actual possession when a police officer found a gun on the floor of a car. *Id.* at 1210. In that case, the officer testified that as he approached the car, the defendant leaned forward as if to retrieve or conceal something under the seat. *Id.* The officer then found the gun in the spot where the defendant's foot had been. *Id.* Based on this testimony, we held that "a reasonable juror could infer that Mr. Jameson had actual physical control of the pistol when the car was pulled over and that he was trying to hide it underneath the seat or under his foot as [the officer] approached." *Id.*

In this case, the jury could reasonably convict Mr. Bedford based on the trial testimony of the two officers. Taking the facts in the light most favorable to the government, we have the following information. Officer Cory witnessed a

---

[1]In this case, Officer Cory did see the gun being fired, but Officer Cory was unable to identify the man who fired it. He could only identify the hat that later was found near Mr. Bedford as the hat he had seen on the shooter. Officer Easter identified Mr. Bedford as the man he had chased, but he did not see the gun until he found it abandoned on a vehicle tire.

man fire a gun into the air and saw him wearing a black hat with yellow stripes. As the crowd left the parking lot, Officer Easter saw a man who looked suspicious because he had his hands down his shirt and appeared to be hiding something. Officer Easter got a good look at the man because he shined his flashlight on him. The man then ran away, and Officer Easter chased him. Officer Easter watched the suspect crouch down by the front-right wheel of a vehicle, and then the officer found a nine-millimeter handgun on the front-right tire.

The officer continued to chase the suspect and radioed for help. Shortly thereafter, other officers apprehended a man, and Officer Easter identified that man as the suspect whom he had been chasing. Officer Easter found a baseball cap on the ground near the man, and Officer Cory identified that hat as the hat worn by the man who had fired a gun into the air. In addition, Officer Cory found a shell casing that matched the gun found on the tire. Provided with all of that testimony, a reasonable jury could have concluded that Mr. Bedford possessed a firearm.[2]

We need not consider the testimony of the defendant's witnesses because it is the province of the jury to assess their credibility. The absence of fingerprints

---

[2]Citing *United States v. Bredy*, 209 F.3d 1193 (10th Cir. 2000), Mr. Bedford argues that the officers' identifications are unreliable and thus do not support his conviction. That case, however, concerns the admissibility of in-court and pre-trial identifications made during a show-up identification procedure. *Id.* at 1195. In contrast, when reviewing the sufficiency of the evidence, we do not re-weigh the credibility of witnesses or decide conflicting evidence. *Bowen*, 527 F.3d at 1076.

on the gun does not by itself render the evidence insufficient. *See, e.g.*, *United States v. Sullivan*, 919 F.2d 1403, 1430–31 (10th Cir. 1990) (upholding a conviction for possession of an unregistered firearm where the defendant claimed he was miles away when the gun was seized and his fingerprints were not on the gun); *United States v. Robinson*, 139 Fed. Appx. 74, 76–77 (10th Cir. July 1, 2005) (unpublished) (holding that the evidence was sufficient to support a conviction for possessing a firearm, even though the gun was found outside the defendant's possession and the fingerprints on the gun could not be matched to the defendant's prints).

The blood on Mr. Bedford's shirt and the chaotic nature of the scene do not inform our inquiry into the sufficiency of the government's evidence. It is the jury's role to weigh the defendant's evidence against the government's evidence. Our only inquiry is whether the government's evidence was sufficient to sustain a conviction. The testimony of two police officers—one of whom clearly saw the suspect before, during and after a chase—plus the physical evidence obtained in this case establish that it was reasonable for the jury to convict Mr. Bedford.

### III. CONCLUSION

The evidence in this case was sufficient to sustain the jury's finding that Mr. Bedford knowingly possessed a firearm. We therefore AFFIRM his conviction.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge