**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 21, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ADRIAN MATA-RODRIGUEZ,

Defendant - Appellant.

No. 10-3272
(D. Kansas)
(D.C. No. 2:10-CR-20024-JWL-1)

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAVIER PONCE-ACEDO,

Defendant - Appellant.

No. 10-3273
(D. Kansas)
(D.C. No. 2:10-CR-20024-JWL-2)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On January 30, 2010, Adrian Mata-Rodriguez sold methamphetamine to a police informant, John Maxwell, at a house where he and Javier Ponce-Acedo (Defendants) resided. Four days later, officers executed a search warrant at the house. They found methamphetamine and firearms in several places. During the search Defendants and a third person started to drive into the house's driveway but then left. They were stopped a few blocks away. Defendants were arrested and taken back to the house separately. Methamphetamine was later found in the patrol car used to transport Mr. Mata-Rodriguez.

A jury in the United States District Court for the District of Kansas convicted Defendants of maintaining drug-involved premises, *see* 21 U.S.C. § 856(a)(2), and of being unlawful aliens in possession of firearms, *see* 18 U.S.C. § 922(g)(5). Mr. Mata-Rodriguez was also convicted of distributing five grams or more of methamphetamine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii); possession with intent to distribute five grams or more of methamphetamine, *see id.*; and unlawful reentry by a deported alien, *see* 8 U.S.C. § 1326(a). Defendants were acquitted of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii), as well as possession of a firearm in furtherance of a drug-trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A)(I); and Mr. Ponce-Acedo was acquitted of possession with intent to distribute five grams or more of

methamphetamine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). Both Defendants were sentenced to prison terms of 188 months.

On appeal Mr. Mata-Rodriguez contends that the evidence was insufficient to sustain his convictions for maintaining drug-involved premises, possessing methamphetamine with intent to distribute, and being an illegal alien in possession of a firearm. Mr. Ponce-Acedo appeals his sentence on the grounds that the district court erred in finding that he had participated in the underlying drug offense, erred in finding that he possessed 50 grams or more of methamphetamine, and improperly departed from the sentencing-guidelines range without explaining its reasons when it sentenced him to the statutory maximum on the firearms charge. Also, he appeals both his convictions on the ground that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence.

Exercising jurisdiction under 28 U.S.C. § 1291, we consolidate the two appeals and affirm. Mr. Mata-Rodriguez's challenges to the sufficiency of the evidence lack merit: a house can be drug-involved premises even if drug dealing is not its sole purpose, circumstantial evidence sufficed to show that Mr. Mata-Rodriguez had possessed the methamphetamine found hidden in the back seat of the patrol car that transported him, and there was sufficient evidence that he constructively possessed a gun found in the kitchen of the house. As for Mr. Ponce-Acedo's sentencing challenges, the district court's factual findings at

sentencing were not clearly erroneous, and, contrary to Mr. Ponce-Acedo's assertion that the court departed from the guidelines offense level, it sentenced him in accordance with the guidelines on the firearms charge. We do not address the merits of Mr. Ponce-Acedo's *Brady* argument because he did not raise it below.

## DISCUSSION

### A. Sufficiency of the Evidence

"We review sufficiency of the evidence de novo." *United States v. Prince*, 647 F.3d 1257, 1268 (10th Cir. 2011). In doing so, we decide whether a reasonable jury, viewing the evidence in the light most favorable to the government, could have found the defendant guilty beyond a reasonable doubt. *See id.*

### 1. Maintaining Drug-Involved Premises

To convict under 21 U.S.C. § 856(a)(2), the jury had to find that Mr. Mata-Rodriguez (1) "managed and controlled the residence," (2) as an owner, lessee, agent, employee, occupant, or mortgagee, and (3) "knowingly and intentionally made the residence available for use for the purpose of unlawfully storing and distributing" illegal drugs. *United States v. McCullough*, 457 F.3d 1150, 1161 (10th Cir. 2006); *see* 21 U.S.C. § 856(a)(2). The house searched by police is the drug-involved premises at issue.

Mr. Mata-Rodriguez's sole challenge to the sufficiency of the evidence on this charge concerns the third element. Although not disputing the connections of the house to drug dealing, he points to its innocent, "domestic" use. He contends that the evidence could not establish the requisite purpose of the house because it was a residence for Mr. Ponce-Acedo, his family, and Mr. Mata-Rodriguez. He argues that even if drugs were distributed at the house, "that does not mean that the purpose of the residence was for storing, distributing, or using methamphetamine." Mata-Rodriguez Br. at 13.

Mr. Ponce-Acedo's argument misconceives the purpose requirement. It is unnecessary that drug distribution be the sole purpose of the premises. In *United States v. Verners*, 53 F.3d 291 (10th Cir. 1995), we construed the meaning of "for the purpose of manufacturing, distributing, or using any controlled substance" in 21 U.S.C. § 856(a)(1). We wrote: "[T]he purpose of manufacturing cocaine need not be the sole purpose for which the place is used," although it "must be at least *one of* the primary or principal uses to which the house is put." *Id.* at 296 (internal quotation marks omitted) (emphasis added). We see no reason to construe the meaning of the very similar language of 21 U.S.C. § 856(a)(2)—"for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance"—any differently. Indeed, in *McCullough* we held that to prove a violation of 21 U.S.C. § 856(a)(2), it is sufficient for the government to

show that the defendant "knowingly and intentionally made the residence available . . . for purposes of his drug-trafficking activities." 457 F.3d at 1161.

Because Mr. Mata-Rodriguez fails to argue that distribution of methamphetamine was not "one of the primary or principal uses" of the house, we need not examine the relevant evidence. But we note that Mr. Mata-Rodriguez sold drugs out of the house four days before he was arrested; and the search of the house uncovered one baggie of methamphetamine in a bedroom and another baggie of methamphetamine in the basement, a container of MSM (which is used as a cutting agent in methamphetamine distribution) in a kitchen cabinet and smaller quantities of MSM in an attic crawl space and the basement, and various items associated with drug trafficking (including firearms and sandwich baggies) in the living room, kitchen, and basement.

## 2.    Possession with Intent to Distribute

The indictment charged that on February 3, 2010 (the date of the search) Mr. Mata-Rodriguez possessed with intent to distribute more than five grams of methamphetamine. To prove possession with intent to distribute under 21 U.S.C. § 841(a), the government must prove that "(1) the defendant knowingly possessed the illegal drugs, and (2) the defendant possessed the drugs with the specific intent to distribute them." *United States v. Lauder*, 409 F.3d 1254, 1259 (10th Cir. 2005). Mr. Mata-Rodriguez challenges his conviction on that charge on the

ground that there was insufficient evidence that he possessed methamphetamine on that date.

We disagree. We need not consider whether the evidence showed his possession of the methamphetamine found in the house during the search, because there was sufficient evidence of his possession of the 21.6 grams of methamphetamine found in the police car in which he traveled after his arrest. The methamphetamine was in a bag stuffed in a quarter-sized hole between the seatbelt and the floorboard in the back seat of the patrol car. The only person besides Mr. Mata-Rodriguez transported in the patrol car that day had been arrested for driving with a suspended driver's license. That arrest occurred before Mr. Mata-Rodriguez's arrest, and the car was thoroughly searched after transport of that person.

To be sure, questions could be raised about whether Mr. Mata-Rodriguez had hidden the methamphetamine in the patrol car. No drugs were found when he was searched before officers put him in the patrol car, nor were drugs found when the officer who transported him searched the vehicle at the end of her shift. But the failure to find the drugs on those two occasions could be attributed to sloppy police work. The search of Mr. Mata-Rodriguez upon his arrest was only a pat-down search, which could easily have missed the drugs because Mr. Mata-Rodriguez was wearing coveralls and multiple layers of clothing. And the officer who transported Mr. Mata-Rodriguez was apparently in a hurry at the end of her

shift and limited her inspection to a glance in the back seat to see if anything stood out. The drugs were found soon thereafter by an officer conducting an inspection of the patrol car before the next shift. The methamphetamine had been stuffed so deep into the back seat that officers had to remove the seat to recover all of it. Moreover, a drug-detection dog was brought to the vehicle in which Defendants had been traveling when they were arrested, and it alerted to the possible presence of illegal drugs near the left rear seat where Mr. Mata-Rodriguez had been sitting. The evidence was sufficient to support a finding by the jury that the methamphetamine had been placed in the patrol car by Mr. Mata-Rodriguez.

### 3. Possession of Firearm

Mr. Mata-Rodriguez was convicted of being an illegal alien in possession of a firearm. He concedes that there was sufficient evidence to prove that he was an illegal alien but argues that there was insufficient evidence to prove he possessed either of the two firearms that officers found at the house.

Possession of a firearm may be actual or constructive. *See United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007). Constructive possession of a firearm found on premises jointly occupied by two or more persons may be proved by showing that the defendant had access to and knowledge of the firearm. *See id.* We need consider only the handgun found in the kitchen cabinet. Because Mr. Mata-Rodriguez was living at the residence and the firearm was not

secured in, say, a locked container, he had access to it. And his knowledge can be inferred from his drug-distribution activity and the location of the gun. Mr. Mata-Rodriguez had sold methamphetamine at the house only four days earlier, and the gun was found in a kitchen cabinet with a two-pound container of MSM, which was found as an impurity in several of the methamphetamine samples obtained in the search and investigation. Particularly in light of the expert testimony at trial that drug dealers use firearms to protect against theft and typically keep them in secret, accessible places near where they keep their drugs, there was sufficient evidence for the jury to find that Mr. Mata-Rodriguez constructively possessed the handgun.

## B.    Sentencing

Mr. Ponce-Acedo was convicted of maintaining drug-involved premises and being an unlawful alien in possession of a firearm. The district court calculated his guidelines offense level as follows: For the drug offense the court determined the base offense level using USSG § 2D1.1, the general guideline for drug offenses. Although USSG § 2D1.8 provides a lower offense level for the crime of maintaining drug premises if the defendant did not otherwise participate in the underlying drug offense, the court refused to apply that section because Mr. Ponce-Acedo had participated in the underlying offense. The court decided that the base offense level should be 32 because Mr. Ponce-Acedo was accountable for more than 50 grams of methamphetamine (actual). *See* USSG

§ 2D1.1(c)(4). It then applied a 2-level enhancement under § 2D1.1(b)(1) because firearms were possessed in connection with the offense. Under USSG § 3D1.2(c) the drug and firearms charges were grouped together because the firearm possession was a specific offense characteristic of the drug charge. The total offense level was therefore the offense level for the more serious offense, *see* USSG § 3D1.3(a)—here, the offense level of 34 for the drug charge. Based on this total offense level and Mr. Ponce-Acedo's criminal-history category of II, the guidelines sentencing range was 168 to 210 months. The court sentenced Mr. Ponce-Acedo to concurrent terms of 188 months on the drug charge and 120 months on the firearms charge.

Mr. Ponce-Acedo challenges his sentence on three grounds: (1) that the district court should have applied USSG § 2D1.8 because he did not participate in the underlying drug offense, (2) that the drugs found in the patrol car should not have been attributed to him in calculating the offense level, and (3) that the court departed upward from the guidelines range without explanation when it imposed a 120-month sentence on the firearms charge. On a challenge to the court's application of the Sentencing Guidelines, we review legal questions de novo and factual findings for clear error, "giving due deference to the district court's application of the guidelines to the facts." *United States v. Maestas*, 642 F.3d 1315, 1319 (10th Cir. 2011) (internal quotation marks omitted). "A finding of fact is clearly erroneous only if it is without factual support in the record or if the

appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made." *Id*. (internal quotation marks omitted). "The facts necessary to calculate the guidelines sentencing range must be proved by a preponderance of the evidence . . . ." *United States v. Flonnory*, 630 F.3d 1280, 1285–86 (10th Cir. 2011). We address Mr. Ponce-Acedo's challenges in turn.

### 1. Failure to Apply § 2D1.8

Mr. Ponce-Acedo argues that the district court should have reduced his offense level by 4 under § 2D1.8 because there was insufficient evidence that he participated "in the underlying controlled substance offense other than allowing use of the premises." § 2D1.8(a)(2). We disagree.

The application note for § 2D1.8(a)(2) states that it does not apply to defendants who "possessed a dangerous weapon in connection with the offense, . . . arranged for the use of the premises for the purpose of facilitating a drug transaction," or "otherwise assisted in the commission of the underlying controlled substance offense." *Id*., cmt. n.1. The defendant has the burden of proving that he is eligible to benefit from § 2D1.8(a)(2). *See United States v. Dickerson*, 195 F.3d 1183, 1189–90 (10th Cir. 1999). The district court found that Mr. Ponce-Acedo possessed a dangerous weapon in connection with the offense and was involved in the drug-trafficking activity more than by "just allowing Mr. Mata-Rodriguez to use his house." R., Vol. 2 pt. 2 at 573.

There was ample evidence to support the district court's finding that Mr. Ponce-Acedo construtively possessed two firearms and participated in drug trafficking at the house. Regarding the firearms, one was in the same kitchen cabinet as his child's shampoo, and when he was told that a firearm had been found in the living room, he asked, "You mean the black one?" (The firearm was black). *Id.*, pt. 1 at 128. This evidence, and his renting the house to live there with his wife and child, sufficed to show the knowledge and access that establish his constructive possession of the firearms. *See Jameson*, 478 F.3d at 1209.

There was also ample evidence of Mr. Ponce-Acedos's participation in drug dealing. Mr. Morales-Ruiz, a cooperating witness who had pleaded guilty to conspiracy to distribute methamphetamine, testified at trial that in 2007 he and another person had brought drugs to Mr. Ponce-Acedo several times, saw him dealing drugs many times, and had talked to him about his dealing methamphetamine. Updating this evidence, methamphetamine and MSM were found throughout the house in the February 2010 search. Most significant were the 21.5 grams of methamphetamine in a men's jacket in Mr. Ponce-Acedo's bedroom, and the MSM in the same kitchen cabinet as a firearm and his child's shampoo.

Mr. Ponce-Acedo argues that the district court should not have found that he was involved in drug trafficking because the jury acquitted him of the same

conduct. But an acquittal does not bind the court at sentencing. *See United States v. Watts*, 519 U.S. 148, 149 (1997).

We affirm the district court's decision not to apply § 2D1.8.

### 2.    Quantity of Methamphetamine

Mr. Ponce-Acedo argues that the district court should not have attributed to him the drugs found in the patrol car, and therefore erroneously determined that the drug quantity involved in the offense was more than 50 grams. But when a defendant participated in joint criminal activity, the drug quantity may include "all *reasonably foreseeable* quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Lauder*, 409 F.3d. at 1267 (internal quotation marks omitted). The drugs found in the patrol car were properly attributed to Mr. Ponce-Acedo.

We have already explained that it was reasonable to infer that the drugs found in the patrol car had been in Mr. Mata-Rodriguez's possession when he was arrested. And immediately before that arrest Mr. Ponce-Acedo had driven him to the driveway of their house. In light of the other evidence of Defendants' joint participation in drug dealing, it would be surprising if Mr. Ponce-Acedo was not fully aware of Mr. Mata-Rodriguez's possession of the drugs and his purpose to distribute them. Mr. Mata-Rodriguez's possession of the drugs should certainly have been reasonably foreseeable to Mr. Ponce-Acedo. The district court's finding on drug quantity was not clearly erroneous.

-13-

### 3.      Firearms Sentence

Mr. Ponce-Acedo argues that the district court departed upward from the guidelines sentencing range without explaining its reasons when it sentenced him to 120 months'imprisonment on the firearms charge. He contends that his base offense level for the firearms conviction is set at 14 by USSG § 2K2.1(a)(6) and that his criminal-history category of II would lead to a guidelines sentencing range of 18 to 24 months, well below his 120-month sentence. But when a defendant is convicted on several charges, the guidelines ranges for the offenses are not calculated independently. Once the total punishment is determined under the guidelines, the guidelines sentence on each count should, if possible, be that punishment. *See* USSG § 5G1.2(b); *United States v. Johnston*, 146 F.3d 785, 795 (10th Cir. 1998). Thus, after the district court determined that Mr. Ponce-Acedo's sentence should be 188 months' imprisonment (which was within the guidelines range), the sentence on each count should have been, insofar as possible, 188 months. The reason Mr. Ponce-Acedo's sentence on the firearms charge was less than that was because 120 months (10 years) was the maximum permissible sentence under 18 U.S.C. § 924(a)(2). *See Johnston*, 146 F.3d at 795. The court's sentence was not a departure from the guidelines; rather, it follows the guidelines advice. We reject the challenge to Mr. Ponce-Acedo's sentence.

### C.     *Brady* Violation

Mr. Ponce-Acedo alleges that the government failed to turn over exculpatory evidence, thereby violating the requirements of *Brady*, 373 U.S. 83. He claims that two events led him to believe that the government withheld evidence concerning Mr. Maxwell's credibility: (1) at trial the government failed to question Mr. Maxwell about Mr. Ponce-Acedo's sale to him of a handgun, although he had told police about the transaction; and (2) during sentencing the government abandoned its claim that drugs found at Mr. Maxwell's house should be attributed to Mr. Ponce-Acedo and admitted that Mr. Maxwell had credibility issues. We do not address the merits of this claim, however, because Mr. Ponce-Acedo is raising it for the first time on appeal.

"If a newly raised legal theory is entitled to appellate review at all—if it wasn't waived before the district court—it may form a basis for *reversal* only if the appellant can satisfy the elements of the plain error standard of review." *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). Further, "the failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131. Mr. Ponce-Acedo does not argue that the alleged *Brady* violation was plain error, so we hold that the argument is waived.

In any event, Mr. Ponce-Acedo could not prevail even if he had argued plain error. "[P]lain error review is not appropriate when the alleged error involves the resolution of factual disputes." *United States v. Hamilton*, 587 F.3d

1199, 1216 n.9 (10th Cir. 2009) (internal quotation marks omitted). "[T]he fact-dependent nature of [the] claims would prevent us from reaching a conclusion that any error by the district court satisfied the plain error standard." *Id.* at 1217 n.9. Mr. Ponce-Acedo's claim that the government withheld evidence that Mr. Maxwell was lying is precisely the sort of alleged error that we cannot resolve on appeal as being "plain" or even error. Because Mr. Ponce-Acedo failed to present this issue to the district court, he "effectively prevented the court from making factual findings that would be germane to the disposition" of his *Brady* argument. *Id.*

**CONCLUSION**

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge