# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――

Argued January 22, 2008          Decided February 22, 2008

No. 06-3045

UNITED STATES OF AMERICA,
APPELLEE

v.

DALE ANN HARRIS,
APPELLANT

―――

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00384-01)

―――

*Howard B. Katzoff*, appointed by the court, argued the cause and filed the briefs for appellant.

*Sarah T. Chasson*, Assistant U.S. Attorney, argued the cause for appellee. With her on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*, *Wendy L. Short*, and *Bryan Seeley*, Assistant U.S. Attorneys.

Before: TATEL, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Dale Ann Harris argues: (1) there was insufficient evidence to sustain her conviction for possession with intent to distribute PCP; (2) the police violated her Fifth Amendment rights by subjecting her to custodial interrogation without a *Miranda* advisement; and (3) the district court violated her due process rights by asking compound questions during jury selection. We reject these challenges and affirm her conviction.

I

Officers from the Metropolitan Police Department executed a search warrant on Harris's apartment, where she lived with her two children. When the police entered, they handcuffed Harris and the other two women inside. Officer Robert S. Cephas then directed the handcuffed Harris to a hallway area, and without informing her of her *Miranda* rights, asked, "is there anything in the apartment that I should know about?" Harris responded there were two guns in the bedroom and the police recovered the guns. In the meanwhile, other officers searched the kitchen and seized jars, vials, tin foil, and spoons, which contained suspect liquid or vegetable matter or smelled like phencyclidine ("PCP"). The Drug Enforcement Administration's forensic lab tested the seized items and found that one jar and three vials contained a total of 34 grams of PCP, a large amount consistent with distribution. A fingerprint specialist also found Harris's latent print on one of the vials containing PCP.

A federal grand jury indicted Harris for: (I) possession of PCP with intent to distribute; (II) possession with intent to distribute within 1,000 feet of a school; and (III) possession of a firearm in relation to drug trafficking. The district court denied Harris's motion to suppress her statements about the guns, holding she was not "in custody." During the *voir dire*, the district court asked potential jurors several compound questions requiring them to decide for themselves whether factors like law enforcement employment histories undermined their objectivity. At the close of the government's case-in-chief, the district court granted Harris's motion for acquittal on the gun charge. The jury then found Harris guilty on Counts I and II and the district court sentenced her to 33 months in prison on Count II.[1] Harris now appeals.

II

Harris argues the government did not present sufficient evidence to support her conviction because it did not prove she "possessed" the PCP found in her kitchen. In considering sufficiency-of-evidence challenges, we view the "evidence in the light most favorable to the government, and affirm a guilty verdict where *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002) (emphasis in original). We conclude the government presented more than enough evidence to satisfy this permissive standard.

The government had the burden of proving Harris either actually or constructively possessed PCP. To demonstrate constructive possession, it had to show she "had the ability to

---

[1] The district court properly dismissed Count I as a lesser-included offense. *See Rutledge v. United States*, 517 U.S. 292, 307 (1996).

exercise knowing dominion and control over the [PCP]." *See United States v. Morris*, 977 F.2d 617, 619 (D.C. Cir. 1992) (internal quotation marks omitted). Harris argues that even though the police found PCP in her kitchen, the government presented no evidence she exercised "knowing dominion or control" over this contraband. Yet, "[a] jury is entitled to infer that a person exercises constructive possession over items found in his home," and this inference applies "even when that person shares the premises with others." *Id.* at 620; *see also United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991) ("The natural inference is that those who live in a house know what is going on inside, particularly in the common areas."). Thus, "if there was sufficient evidence from which a juror could infer that [Harris] lived in the apartment where [s]he was arrested, the jury could infer that [s]he constructively possessed the drugs." *Morris*, 977 F.2d at 620. In this case, only Harris and her two children were listed on the apartment's lease and she does not dispute she lived there.

Harris argues the government has to present some evidence of "*knowing* dominion and control" in joint-occupancy situations where drugs and related accoutrements are completely hidden from view. We agree, since a contrary view could unfairly sweep up unwitting roommates or housemates and subject them to the harsh criminal punishments associated with drug crimes. *See United States v. James*, 764 F.2d 885, 890 (D.C. Cir. 1985) (quoting *United States v. Bonham*, 477 F.2d 1137, 1139 (3d Cir. 1973) (en banc) (finding evidence insufficient where there was "nothing except the joint occupancy of the room upon which an inference of possession could be based")). But this is not a hidden contraband case. Harris's fingerprint was on a vial with PCP in it and the police found PCP in four containers, at least two of which were readily visible upon opening the

freezer or kitchen cabinet. Moreover, the kitchen was littered with evidence that police experts testified was consistent with PCP distribution: from jars smelling of PCP to tinfoil containing a black leafy substance. *See Jenkins*, 928 F.2d at 1179 (finding sufficient evidence of constructive possession where there was a computerized scale on the kitchen counter and cocaine pieces on the cutting board in defendant's apartment). Accordingly, there was sufficient evidence that Harris constructively possessed the PCP.[2]

III

Harris argues we should vacate her conviction because Officer Cephas violated her Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), by placing her in handcuffs, leading her to the hallway, and immediately asking her "is there anything in the apartment that I should know about?" As every television viewer knows, an officer ordinarily may not interrogate a suspect who is in custody without informing her of her *Miranda* rights. *See id.* Whether Cephas subjected Harris to custodial interrogation is a question we do not reach today. *Compare United States v. Bautista*, 684 F.2d 1286, 1292 (9th Cir. 1982) (suspect handcuffed during a *Terry* stop and then asked questions was not "in custody" for *Miranda* purposes), *with United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("[A] reasonable

---

[2] The government argues it also presented sufficient evidence that Harris actually possessed PCP. *See United States v. Molinaro*, 877 F.2d 1341, 1348–49 (7th Cir. 1989) (defendant's fingerprints on a bag containing cocaine "certainly suggests" he actually possessed the bag). We need not reach this argument because our finding that Harris constructively possessed the PCP is sufficient to sustain her conviction.

person finding himself placed in handcuffs by the police would ordinarily conclude [he was] in custody.").

Even assuming Cephas violated Harris's Fifth Amendment rights, the district court's admission of Harris's answer pinpointing the location of the guns was harmless beyond a reasonable doubt. "Error is harmless if it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Green*, 254 F.3d 167, 170 (D.C. Cir. 2001) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)); *see also Neder v. United States*, 527 U.S. 1, 18 (1999). While the jury could have drawn some incriminating inference from Harris's knowledge about the guns, *see United States v. Payne*, 805 F.2d 1062, 1065 (D.C. Cir. 1986) ("it has uniformly been recognized that substantial dealers in narcotics possess firearms"), here, the link between the drugs and guns was so attenuated the district court dismissed the charge of possessing a firearm in connection with drug trafficking. Tellingly, once the district court dismissed this charge, the government made only one glancing reference to Harris's knowledge of the guns in its closing argument. Instead, it focused on the strong evidence of Harris's connection to the drugs: from Harris being the only adult responsible for the lease to her fingerprint appearing on the vial containing PCP to conspicuous evidence of drug dealing in plain view in the kitchen. In light of this strong evidence and the minor role the guns played in relation to the drug counts, the government has shown, beyond a reasonable doubt, that introduction of Harris's statement did not contribute to the verdict.

IV

As part of the *voir dire*, the district court asked prospective jurors the same compound questions we found

troubling in *United States v. West*, 458 F.3d 1 (D.C. Cir. 2006), and *United States v. Littlejohn*, 489 F.3d 1335 (D.C. Cir. 2007). As in those cases, the district court explained to the jurors that, first, the court would ask them to consider whether they had a characteristic or experience that could bias their judgment. The jurors were not to raise their hands at this point. Then, the court would ask if the potentially prejudicial factor *actually* rendered them unable to be fair and impartial. Only if they answered affirmatively to this second question would they raise their hands and come up to the bench.

The district court asked several compound questions, including whether potential jurors were members of crime prevention groups or had been the victims of violent crimes. Most relevant for our purposes, the court asked the following two-part question:

> [Are] you personally, a close family member or a close personal friend presently or previously employed by any law enforcement agency? Don't raise your hand if your answer is yes. … If your answer is yes. As a result of that experience that either you have had personally or a close family member or close friend … do you believe that you, you personally would be unable to be fair and impartial to both sides if selected as a juror … ?

None of the jurors raised their hands and the district court overruled Harris's objection to this method of questioning. The district court also asked several one-part questions, directly asking jurors to raise their hands if they knew any potential witnesses or believed they could not hold the government to its burden of proof.

"[W]hether a juror can render a verdict based solely on evidence adduced in the courtroom should not be adjudged on that juror's own assessment of self-righteousness without something more." *West*, 458 F.3d at 11. Accordingly, compound questions can violate a defendant's Sixth Amendment rights by undermining his ability to have a "full and fair opportunity to expose bias or prejudice on the part of the veniremen." *Littlejohn*, 489 F.3d at 1342. We vacate a jury's verdict in response to a district court's use of compound questions only if the district court "abuses its discretion, and there is substantial prejudice to the accused." *Id.* In *West* and *Littlejohn*, this circuit conducted case-specific analyses for virtually identical compound law-enforcement questions.

*West* held the district court did not abuse its discretion in asking the compound law enforcement question. In that case, an officer caught the defendant carrying a bag with a gun inside. *West* explained there was no abuse of discretion because officer credibility was not at issue since the defendant admitted he was carrying the bag and his only defense was he did not intend to possess the gun. In addition, the defendant already had the current employment information for most potential jurors and never asked for past employers. Finally, some of the traditional one-part questions the district court asked provided the defendant additional opportunities to learn about juror prejudice. *See* 458 F.3d at 7–8. *West* also held there was no substantial prejudice because the district court instructed the jury to give no special weight to the testimony of law enforcement officers, the defendant made no showing of actual juror prejudice, and the evidence against the defendant was overwhelming because the police caught him red-handed. *See id.* at 8–9.

*Littlejohn* presents a strong contrast to *West*. There, the police found a gun in a laundry basket in the defendant's mother's home. The police claimed that when they broke into the house, the defendant darted out of the room containing the gun; but the officer's testimony was somewhat inconsistent and the defendant's mother claimed the room and laundry basket belonged to the defendant's brother. 489 F.3d at 1337–38. Accordingly, this circuit held the district court abused its discretion in asking the compound law enforcement question and this was substantially prejudicial to the defendant. *Littlejohn* stressed the officer's credibility was paramount, since the government's case turned on whether the jury believed his account that the defendant was running out of the room. Moreover, the evidence against the defendant was extremely thin since the police did not see him with the gun and the defendant's mother testified the room and laundry basket belonged to his brother. In addition, there was no evidence the defendant received a list of potential jurors' current employers, and he asked about past employment history, including employment history related to the officers' employer. Finally, *Littlejohn* came to this conclusion despite both the district court's use of one-part questions that could have exposed juror prejudice and the defendant's failure to show actual juror bias. *Id.* at 1344–47.

This case is far more like *West* than *Littlejohn* on the overlapping abuse of discretion and substantial prejudice inquiries. Most importantly, the evidence of Harris's guilt was strong and the verdict did not turn on police credibility. Harris was the lessee of the apartment, the kitchen was littered with PCP and drug paraphernalia, and her fingerprint was on a vial containing PCP. Harris argues officer credibility was at issue because she challenged the way the police handled the evidence and because the police testified that items in the kitchen smelled of PCP, even though some of

them tested negative for the drug. While these factors make Harris's case stronger than *West*, it is still far from a situation like *Littlejohn* where "the jury could never have convicted [defendant] without crediting [the officers'] testimony." *Littlejohn*, 489 F.3d at 1345. After all, Harris never argued police misconduct somehow placed her fingerprints on the vial containing PCP, nor could she link anyone else to the drugs. Furthermore, as in *West*, Harris had the current employment information of potential jurors and never specifically asked for former employer information or employment history specifically relating to the Metropolitan Police Department. Finally, as in *West* (and *Littlejohn*), the district court asked one-part questions that helped expose any potential juror bias and Harris did not show any evidence of actual juror bias.

In sum, while the district court should not have used these compound questions, we affirm Harris's conviction for much the same reasons as in *West*.

\* \* \*

The judgment of conviction is therefore

*Affirmed.*