FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LAWRENCE SAMUELS, JR.,

    Defendant - Appellant.

No. 23-6000
(D.C. No. 5:18-CR-00152-PRW-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.

_____

On September 11, 2022, Texas Department of Public Safety Corporal

Nathaniel Chestnut stopped Lawrence Samuels, Jr., for speeding.  Mr. Samuels was

driving a rental car and was on federal supervised release.  He consented to a search

of the car.  When Corporal Chestnut opened the hood, he found a sock tied to the

engine and discovered a gun inside the sock.  He arrested Mr. Samuels.  That same

day, a probation officer petitioned the district court to revoke Mr. Samuels's

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

supervised release, alleging three violations:  committing a crime, possessing a firearm, and leaving the judicial district.

At the revocation hearing, Mr. Samuels admitted to leaving the district.  The district court found he had committed the other two violations because he had constructive possession of the gun.  It revoked Mr. Samuels's supervised release and sentenced him to 24 months in prison followed by 36 months of supervised release.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand because the district court applied the wrong constructive possession standard.

## I.  BACKGROUND

### A. *Factual History*

Mr. Samuels served 14 years of a 17.5-year sentence for a federal drug offense before he was granted executive clemency.  His supervised release was set to expire in May 2023.

On September 8, 2022, Mr. Samuels rented a car near Oklahoma City.  He testified that he had "originally reserved a Kia," but the "tire was flat."  ROA, Vol. 3 at 66.  The rental manager gave him the only car left—a Toyota Camry that had "just" been returned.  *Id.* at 68.  Mr. Samuels watched the manager vacuum the passenger compartment of the car after Mr. Samuels noticed it "had grass on the inside" and "was dirty."  *Id.* at 68-69.  Mr. Samuels did not look under the car's hood and did not observe the manager look under the hood either.  *Id.* at 69.

2

On September 11, Mr. Samuels was driving the Toyota Camry eastbound on I-40 in Texas. Corporal Chestnut pulled him over for going 84 mph in a 75-mph zone. Mr. Samuels provided his license and the car's rental agreement to the trooper.

Asked where his travel began, Mr. Samuels said he had been in Amarillo visiting an aunt. Corporal Chestnut pointed out that Mr. Samuels was going the wrong direction to be traveling from Amarillo to his home near Oklahoma City. Mr. Samuels then said he had been in Bakersfield, California, visiting his fiancée, and had lied because he was on supervised release and was not permitted to travel outside the Western District of Oklahoma. He later acknowledged he was outside the judicial district when he was pulled over in Texas.

Mr. Samuels denied having any weapons on his person or in the rental car. He consented to search of the car. Corporal Chestnut "located a firearm, a Glock handgun, in the engine bay. It was tied up in a long, black sock and was located on the passenger side front quarter panel." *Id.* at 22. He later searched the serial number on the gun, could not identify the owner, and concluded the gun was not stolen. Another trooper tried and failed to lift fingerprints from the gun.

Corporal Chestnut arrested Mr. Samuels for being a felon in possession of a firearm. His probation officer filed a Petition for Warrant or Summons for Offender Under Supervision, alleging Mr. Samuels violated (1) a mandatory condition of his release not to commit another federal, state, or local crime; (2) a standard condition not to possess a firearm; and (3) another standard condition not to leave the judicial district without permission of the district court or his probation officer.

3

B. *Procedural History*

At the final revocation hearing on these alleged violations, Mr. Samuels admitted he left the judicial district without permission, but he disputed the violations stemming from his alleged possession of a firearm.

In determining whether Mr. Samuels had constructively possessed the firearm, the district court considered (1) whether it could infer possession from his control of the rental car, or (2) whether it should require the Government to show a nexus between Mr. Samuels and the gun. *Id.* at 53, 87. As explained below, the court thus decided between a sole-occupancy standard and a joint-occupancy standard for constructive possession. The court settled on the former, concluding that "knowledge, dominion, and control of the gun can be properly inferred." *Id.* at 105.

The district court determined that Mr. Samuels's testimony did not overcome this inference. *Id.* at 88-89; *see also id.* at 104-05. It "ha[d] trouble believing [Mr. Samuels's] testimony" "that he did not know the gun was there" because he lied to the trooper about his travel plan. *Id.* at 105.

The district court found Mr. Samuels guilty of all three violations. It revoked his supervised release and sentenced him to 24 months in prison and 36 months of supervised release. Mr. Samuels timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

#### 1. **Preservation**

The Government argues plain error review applies to Mr. Samuels's argument that the district court erred in failing to apply a joint-occupancy standard. Aplee. Br. at 13. It contends that "[a]t no time did Mr. Samuels object or argue that the district court used the wrong standard of constructive possession instead of a joint occupancy standard." *Id.* We conclude the issue was preserved and plain error review does not apply.

An issue is preserved for review if (1) the appellant "pressed" it before the district court or (2) the district court "passed upon" it. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 992 (10th Cir. 2019) (quotations omitted). Even if Mr. Samuels did not press the joint-occupancy issue, the court passed upon it.

The district court asked whether this matter presented (1) "[a] straight constructive possession inquiry," that is, inferring possession from "ownership dominion, or control of the . . . premises"; or (2) a "joint occupancy issue because it's a rental car," which would require "some evidence to show some connection or nexus between the defendant and firearm." ROA, Vol. 3 at 53. The court could not "find any legal authority for the fact that," because the gun was found in "a rental car," it should apply "a joint occupancy-type analysis." *Id.* at 86-87.

The district court concluded that because the "undisputed evidence [showed] that the defendant had exclusive possession of the car," "knowledge, dominion, and

control of the gun can be properly inferred." *Id.* at 105. It thus passed upon whether to apply a joint-occupancy constructive possession standard. As a result, we do not review for plain error.

2. **Error Review**

To revoke supervised release, the district court must find by a preponderance of the evidence that the defendant violated a condition of his release. 18 U.S.C. § 3583(e)(3); *United States v. Disney*, 253 F.3d 1211, 1213 (10th Cir. 2001). "We review the district court's decision to revoke supervised release for abuse of discretion." *United States v. Jones*, 818 F.3d 1091, 1097 (10th Cir. 2016) (quotations omitted).

"Legal questions relating to the revocation of supervised release are reviewed *de novo*." *Id.* "A district court necessarily abuses its discretion when it makes an error of law." *Id.* We review factual findings for clear error and we defer to a district court's credibility determinations. *United States v. Jordan*, 806 F.3d 1244, 1252 (10th Cir. 2015).

"As the trier of fact in a revocation proceeding, the district court has the exclusive function of appraising the credibility of the witnesses, determining the weight to give their testimony, and resolving any conflicts in the evidence." *United States v. Shea*, 512 F. App'x 770, 775 (10th Cir. 2013) (unpublished); *see United States v. White*, 39 F.3d 1193, at *1 (10th Cir. 1994) ("giving due deference to the district court's evaluation of the credibility of the evidence received during the revocation and

sentencing hearings") (unpublished).[1]  We recently "emphasize[d] that the district court is in the best position to make credibility determinations, and we are loath to usurp the role of factfinder." *United States v. Phillips*, 71 F.4th 817, 824 (10th Cir. 2023) (citation and quotations omitted).

## B.  *Constructive Possession*

The supervised release violations at issue are Mr. Samuels's alleged (1) commission of the crime of being a felon in possession of a firearm, and (2) possession of a firearm.  Both turn on whether he possessed the gun found in the rental car.  Because Mr. Samuels did not have actual possession of the gun, the Government needed to show he had constructive possession.

### 1.  **Legal Background**

The parties contest whether the district court should have applied a sole- or a joint-occupancy standard.  Under both, "constructive possession occurs when a person not in actual possession knowingly has the power and intent to exercise dominion and control over a firearm." *United States v. Samora*, 954 F.3d 1286, 1290 (10th Cir. 2020) (alterations and quotations omitted).

First, under the sole occupancy standard, *United States v. Benford*, 875 F.3d 1007, 1019 (10th Cir. 2017) (referring to "sole occupancy cases"); *see United States v. Meza*, 701 F.3d 411, 419, 422 (5th Cir. 2012) (referring to a "single occupancy

---

[1] We cite the unpublished cases in this opinion for their persuasive value.  *See* Fed. R. App. 32.1(a); 10th Cir. R. 32.1(A).

standard"), "[k]nowledge, dominion, and control can be inferred when a defendant has exclusive control over the premises in which the firearm was found," *Samora*, 954 F.3d at 1290 (quotations omitted).  A vehicle is a "premises."  *See United States v. Jameson*, 478 F.3d 1204, 1209-10 (10th Cir. 2007).  Intent to control—required after *Henderson v. United States*, 575 U.S. 622 (2015)—may be inferred from exclusive control.  *Benford*, 875 F.3d at 1019.

Second, the joint-occupancy standard applies "when two or more people occupy a given space."  *Jameson*, 478 F.3d at 1209 (quotations omitted).  When the defendant did not exclusively control the premises, the government may not rely on inference only.  *Id.*  It must "meet a higher burden in proving constructive possession" by showing a "nexus between the defendant and the firearm."  *Id.* (quotations omitted).  The "nexus" must "support[] a plausible inference that the defendant had knowledge of and access to the weapon or contraband."  *Samora*, 954 F.3d at 1291 (quotations omitted).[2]  Thus, when more than one person occupies a

---

[2] Several principles guide the nexus analysis:

> (1) proximity alone may not establish knowledge and access . . . , (2) neither may proximity alone support a finding of dominion and control . . . , (3) evidence of knowledge and access gives rise to a permissive inference of dominion and control, (4) evidence of knowledge and access may be proved by direct evidence, or inferred from circumstantial evidence, so long as the circumstantial evidence includes something other than mere proximity, (5) proximity may be considered with other evidence in the case to support an inference of knowledge and access, and dominion and control over the firearm.

*Jameson*, 478 F.3d at 1209-10.

vehicle simultaneously, the joint-occupancy standard applies. *See, e.g.*, *Jameson*, 478 F.3d at 1207, 1209; *United States v. Washington*, 783 F.3d 1198, 1200 (10th Cir. 2015).

We also have applied the joint-occupancy standard when a defendant was alone in the vehicle, a firearm was found, and (1) the vehicle belonged to the defendant's brother's friend, *United States v. Hishaw*, 235 F.3d 565, 572 (10th Cir. 2000); (2) the "car [was] registered to [the defendant's] wife," *United States v. Simpson*, 845 F.3d 1039, 1061 (10th Cir. 2017); and (3) the "[d]efendant borrowed the car from his ex-girlfriend," *Samora*, 954 F.3d at 1290. The Eighth Circuit applied a joint-occupancy standard when the defendant—the sole occupant of a rental car—said that drugs found in the car "between the [trunk] lid liner and the sheet metal" were placed there "before he rented it." *United States v. Young*, 68 F.4th 1095, 1097-98 (8th Cir. 2023).

Courts apply the joint-occupancy standard to avoid finding innocent occupants liable for contraband placed by another occupant. *United States v. Harris*, 515 F.3d 1307, 1310 (D.C. Cir. 2008) ("[A] contrary view could unfairly sweep up unwitting roommates or housemates . . . ."); *United States v. Ramos*, 852 F.3d 747, 754-55 (8th Cir. 2017) ("[A] father could be imprisoned for marijuana that his son has hidden in the house, or a wife could be jailed for her husband's secret cache of illegal guns."); 3 Wharton's Criminal Law § 35:3 (16th ed. 2023) ("[E]xclusive control over a location . . . is either missing or diminished in joint control situations."); *see United*

9

*States v. Michel*, 446 F.3d 1122, 1128 (10th Cir. 2006) (noting that the heightened joint-occupancy standard avoids convictions based on "inferences upon inferences").

2. **Application**

Mr. Samuels argues the district court erred in declining to apply the joint-occupancy constructive possession standard.  We agree.

Because a renter does not own a rental car, and because rental cars frequently change hands, courts should consider whether to apply the joint-occupancy standard when contraband is found in a rental car.  *See Young*, 68 F.4th at 1098 (applying joint-occupancy standard to a rental car).  Although this standard may not apply in every rental-car situation, the facts in this case point to applying it here.

In reaching this conclusion, we do not rely on Mr. Samuels's testimony that the Toyota Camry he rented had "just" been returned and had not been cleaned; that he watched the rental manager vacuum the passenger compartment; and that neither he nor the manager (while in Mr. Samuels's presence) looked under the car's hood. ROA, Vol. 3 at 68-69.  The district court was troubled by Mr. Samuels's lie to Corporal Chestnut about his travel plan and his explanation for why he lied.  *See id.* at 93-94, 105.  These doubts about Mr. Samuels's credibility led the court to disbelieve his testimony concerning the circumstances of his renting the car.  *Id.* at 89-91.  Because we must defer to the district court's credibility determinations, *Jordan*, 806 F.3d at 1252, we consider only whether the remaining facts suffice to show the district court applied the wrong constructive possession standard.  They do.

The joint-occupancy standard should apply because (1) Mr. Samuels was driving a rental car; (2) he had possession of the car for just three days; and (3) the gun was located not in the passenger compartment or the trunk but under the hood inside a sock tied to the engine block, where a renter and perhaps also the rental company are less likely to check than inside the car.  *See Young*, 68 F.4th at 1097-98 (applying joint-occupancy standard where drugs were found "between the [trunk] lid liner and the sheet metal"); *United States v. Chatmon*, 742 F.3d 350, 353 (8th Cir. 2014) (noting that a jury could have concluded a "prior lessee . . . placed the firearm in the vehicle" because "an employee of the car rental agency testified that although the interior of every returned car is inspected, the inspection is 'more like a glance' than a 'detailed search'").

As noted, the district court could not "find any legal authority for the fact that," because the gun was found in "a rental car," it should apply "a joint occupancy-type analysis."  *Id.* at 86-87.  But even if we have not applied this standard specifically to rented vehicles, we have applied it where, as here, the defendant was the sole occupant but not the owner of the vehicle in which a firearm was found.  The facts in this case point to application of the joint occupancy standard as much as those in *Samora*, *Hishaw*, and *Simpson*.

In *Hishaw*, the defendant was alone in a borrowed car when officers pulled him over and "smelled burning marijuana, noticed what appeared to be a marijuana cigarette on the ground, and . . . observed what appeared to be another marijuana cigarette between the driver's and passenger's seats."  235 F.3d at 567; *see also id.* at 572.  They then found

11

a "semiautomatic pistol under the passenger's seat." *Id.* at 567.  We applied a joint-occupancy standard because the defendant said the car was borrowed and "[t]he government presented no evidence to rebut this statement or to show the extent of his dominion and control over the car." *Id.* at 572.

In *Samora*, the "[d]efendant had borrowed his ex-girlfriend's car and drove it alone to a restaurant." 954 F.3d at 1289.  When he left the restaurant, officers tried to arrest the defendant on an outstanding warrant, and he fled. *Id.*  "After the officers caught and arrested [the d]efendant, they searched the vehicle he had been driving and found a loaded firearm inside the center console," *id.*, as well as the "[d]efendant's wallet in the driver's side door," *id.* at 1290.  Relying on *Hishaw*, we applied the joint-occupancy standard "because [the d]efendant borrowed the car from his ex-girlfriend." *Id.* at 1290-91.

And in *Simpson*, the defendant "was sitting [alone] in the driver's seat of his car with the seat in a reclined position" when police executed a search warrant on the car. 845 F.3d at 1063.  They found a "handgun and ammunition . . . under the driver's seat." *Id.* at 1061.  We held that because the defendant "jointly occupied" the car "with his wife," who was the registered owner of the car, possession could not be inferred from occupancy alone. *Id.* at 1061-62.[3]

---

[3] By contrast, we applied the sole-occupancy standard in *United States v. Cota-Meza*, 367 F.3d 1218 (10th Cir. 2004), because even though the defendant was driving a "minivan which belonged to [someone else]," *id.* at 1220, "[t]he hidden compartment" where the contraband was found "contained 18.8 kilograms of cocaine with a wholesale street value in excess of $2.6 million," and "[s]uch a large amount of cocaine with a high street value supports a reasonable inference of [the

As in these cases, Mr. Samuels did not own the car and other people previously had access to it. And as in *Young*, the contraband was hidden in a place unlikely to be noticed by a renter who did not place the contraband there.

Thus, even disregarding Mr. Samuels's testimony about the circumstances of acquiring the rental car due to the district court's credibility concerns, we conclude the district court should have applied the joint-occupancy standard here.

3. **Harmless Error**

We are unable to conclude that the district court's choice of a sole-occupancy standard was harmless.

After the testimony at the revocation hearing, the district court said, "It seems, I think undisputed, that Mr. Samuels knowingly held ownership, dominion, or control over the rental car. That's where the gun was found." ROA, Vol. 3 at 86. Then it said, "[I]f it's in the car and you have possession of the car, that's enough for constructive possession." *Id.* Mr. Samuels's counsel argued that "there [was] a lack of knowledge." *Id.* at 87. The court responded, "[T]he knowledge though goes as to knowledge that he was in possession of the car." *Id.*

After hearing further from both counsel, the district court reiterated "that the defendant had exclusive possession of the car. Because of that, knowledge,

---

defendant's] knowledge of the presence of the contraband in the minivan," *id.* at 1224.

dominion, and control of the gun can be properly inferred." *Id.* at 105. This statement mirrors the sole-occupancy standard. *See Samora*, 954 F.3d at 1290.

The district court then asked whether "Mr. Samuels's testimony can overcome that inference." ROA, Vol. 3 at 105. It said:

> And Mr. Samuels did testify that he did not know the gun was there. I have trouble believing that testimony for the credibility issues that we've already described. Mr. Samuels has admittedly lied, with respect to the conduct in this case, before. Here, it strikes me as his testimony, as in many cases, is sort of inconsistent with the facts and common sense, you know. The excuse . . . given [for] why he lied to the trooper doesn't make a lot of sense.

*Id.* The court added that it "can't put much weight on Mr. Samuels'[s] denial of knowledge of the gun." *Id.* at 106.

The foregoing shows that the district court applied the sole-occupancy standard to infer constructive possession and determined that Mr. Samuels did not rebut the inference of knowledge because the court did not find his testimony credible. But the court did not find that Mr. Samuels knew about the gun, which is required under the joint-occupancy test. *See Samora*, 954 F.3d at 1291.

"In non-constitutional harmless error cases, the government bears the burden of demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected." *United States v. Keck*, 643 F.3d 789, 798 (10th Cir. 2011) (quotations omitted). "An error is not harmless if it requires us to speculate on whether the court would have reached the same determination absent the error." *United States v. Harrison*, 743 F.3d 760, 764 (10th Cir. 2014) (alterations and quotations omitted).

On appeal, the Government contests the proper constructive possession standard under the plain-error framework. It thus has not attempted to show by a preponderance of the evidence that the error was harmless. And we cannot say, on the record before us, that the district court's application of the wrong standard was harmless. When we are "place[d] in the zone of speculation and conjecture," *United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005), the proper course is to remand for the court to apply the correct standard, *see United States v. Williams*, 48 F.4th 1125, 1136 (10th Cir. 2022).

## III. **CONCLUSION**

We reverse and remand for further proceedings consistent with this opinion.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge